UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BRADLEY REPHEN,                                    Civil Action No.:

                Plaintiff,

      -against-                                **CLASS ACTION COMPLAINT**


GENERAL MOTORS CORPORATION d/b/a,           **DEMAND FOR JURY TRIAL**
ONSTAR®,


             Defendant(s).
-------------------------------------------------------------------X

Plaintiff BRADLEY REPHEN ("Plaintiff"), by and through his attorneys,

Edward B. Geller, Esq., P.C., Of Counsel to M. Harvey Rephen & Associates, P.C., as

and for its Complaint against the Defendant, GENERAL MOTORS CORPORATION

d/b/a ONSTAR ® (hereinafter referred to as Defendant(s)"), respectfully sets forth,

complains and alleges, upon information and belief, the following:

## INTRODUCTION/PRELIMINARY STATEMENT

1.     Plaintiff brings this action on his own behalf for damages and declaratory

and injunctive relief arising from the Defendant's violation(s) of New York General

Business Law §§ 349 and 350: N.Y. GBL § 349(a) and N.Y. GBL § 350 N.Y.

## PARTIES

2.     Plaintiff BRADLEY REPHEN is a resident of the State of New York, residing

at 41 Powderhorn Drive, Wesley Hills, New York 10901.

3.      Defendant GENERAL MOTORS CORPORATION d/b/a ONSTAR® is a Michigan company with an address at 100 Renaissance Center, Detroit, MI 48265-2000.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter pursuant to 28 USC §1332, as well as 28 U.S.C. §2201.  If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. §1367(a).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## ALLEGATIONS FOR CLASS ACTION

6.      Plaintiff brings this action as a class action, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of himself and all persons/consumers, along with their successors-in-interest, who have received similar letters/communications from Defendant which, as alleged herein, are in violation of the  NYS GBL §§ 349 and 350 as of the date of Plaintiff's Complaint (the "Class").  Excluded from the Class is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant.                Upon information and belief, hundreds of persons have received debt collection notices and/or letters/communications from Defendant, which violate various provisions of the NYS GBL §§ 349 and 350.

7.      This Class satisfies all the requirements of FRCP Rule 23 for maintaining a class action.

8.      The Class is so numerous that joinder of all members is impracticable. Upon information and belief, hundreds, perhaps thousands or more persons have received

letters/communications from Defendant, which violate various provisions of the NYS GBL §§ 349 and 350.

9.      The letters/communications from Defendant, received by the Class, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer".

10.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation: (i) Whether Defendant violated various provisions of the NYS GBL §§ 349 and 350; (ii) Whether Plaintiff and the Class have been injured by Defendant's conduct; (c) Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and, (iv) Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

11.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

12.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted,

13.     The members of the Class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

14.     Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications resulting in the establishment of

inconsistent or varying standards for the parties.

15.     A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

16.     Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

17.     Absent a class action, the Class members will continue to suffer losses borne from Defendant's breaches of their statutorily protected rights as well as monetary damages, thus allowing and enabling:  (a) Defendant's conduct to proceed and; (b) Defendant to further enjoy the benefit of its ill-gotten gains.

18.     Defendant has acted, and will act, on grounds generally applicable to the entire Class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

19.     Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "18" herein with the same force and effect as if the same were set forth at length herein.

20.     On October 28, 2014, Plaintiff entered into a lease agreement for a vehicle, manufactured by Defendant GM.

21.     Said vehicle was a 2015 Chevrolet Tahoe (hereinafter referred to as "the Vehicle").

22.     The Vehicle, and all vehicles manufactured by Defendant are equipped with an OnStar® navigation system.

23.     According to Plaintiff's lease agreement, Plaintiff and, upon information and belief, all consumers who lease Defendant's vehicles, are supplied with OnStar® navigation system at no cost for a period of six (6) months.

24.     Accordingly, Plaintiff's six-month free OnStar® service would end on April 27, 2015.

25.     In or about March, 2015, Plaintiff received a letter purporting to be from OnStar which letter informed Plaintiff that OnStar® had reason to believe that The Vehicle had been sold or traded and therefore the OnStar® services would be discontinued within a very short period of time unless Plaintiff contacted Onstar.

26.     In or about March 2015, Plaintiff placed a telephone call to Defendant and was connected to a female employee who identified herself as a representative of OnStar®. Plaintiff referenced the letter and informed Defendant's representative that this information was incorrect and that The Vehicle, had only recently been leased on October 28, 2014 and had been neither sold nor traded. Defendant's representative then stated that she would correct her records accordingly and the call concluded.

27.     On April 10, 2015, Plaintiff received an electronic communication from Defendant, a copy of which is attached hereto as Exhibit "A."

28.     Defendant's e-mail featured extremely large letters stating: "CANCELLATION NOTICE."

29.     Defendant's e-mail sub-heading stated: "OnStar can no longer keep you safe, secure and connected on the road."

30.     Defendant's e-mail then addressed Plaintiff and stated: "We recently received notice that your 2015 Chevrolet Tahoe has been sold or traded. Therefore, your OnStar®1 services have been cancelled and your hardware has been deactivated. This means that, even in an emergency, you will no longer be able to count on OnStar to provide critical services, including: Automatic Crash Response; Live, 24/7 OnStar Advisor emergency assistance; Stolen Vehicle Assistance. We hope you keep us in mind as you move on to your next vehicle and allow us to continue to keep you and your loved ones safe and secure while on the road.  If you still own this vehicle or have purchased a new one and wish to continue enjoying the peace of mind OnStar provides, please push the blue OnStar button in your vehicle to reactivate your services. Only then can you ensure that an OnStar Advisor will be there for you 24 hours a day, 7 days a week."

31.     Defendant's e-mail was signed "Sincerely, Terry M. Inch, OnStar, Chief Operating Officer."

32.     On April 19, 2015, Plaintiff attempted to use OnStar in his vehicle whereupon an Advisor came on and informed Plaintiff that his account was cancelled. Plaintiff explained that OnStar's service was supposed to be free for six months and termination should not occur before April 27, 2015. The Advisor placed Plaintiff on hold and shortly after, returned to the line and informed Plaintiff that his service was reactivated.

33.     On April 22, 2015, Plaintiff received a second electronic communication from Defendant attached hereto as Exhibit "B."

34.     Defendant's e-mail's "Subject" was: "Action Needed: OnStar User Terms and

Privacy Statement."

35.     Defendant's e-mail stated: "Don't get deactivated – Act Now before it's too late.

36.     Defendant's e-mail bore the OnStar® logo and the heading" Complete Your Account Set-Up."

35.     Defendant's e-mail stated: "If you do not accept the OnStar User Terms and Privacy Statement immediately, or if you decline, your OnStar trial and RemoteLink Key Fob Services (and OnStar Vehicle Diagnostics for eligible vehicles) will be cancelled and the OnStar hardware in this vehicle will be deactivated. This means that even in an emergency, OnStar will be unable to provide you with critical services including: Automatic Crash Response; Live 24/7 OnStar Advisor Emergency assistance; Stolen Vehicle Assistance. To avoid deactivation, please act immediately. Only then can you ensure that OnStar will be there for you 24 hours a day, 7 days a week."

## FIRST CAUSE OF ACTION
### (Violations of NYS Gen. Bus. Law §349, §350)

36.     Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "35" herein with the same force and effect as if the same were set forth at length herein.

37.     Pursuant to N.Y. GBS.LAW §349:NY Code-Section 349: Deceptive acts and practices unlawful, (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful (b) whenever the Attorney General shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful,

he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. Said violations include, but are not limited to, the following:

  (4)  Offering goods or services with intent not to sell them as offered;

  (9) b. Unconscionable trade practice. Any act or practice in connection with the sale, lease, rental or loan or in connection with the offering for sale, lease, rental or loan of any consumer goods or services, or in the extension of consumer credit, or in the collection of consumer debts which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer.

  38.  Defendant violated (4) of N.Y. GBS.LAW §349:NY Code-Section 349 by offering goods and services including six (6) months of free service to Plaintiff and all consumers who lease Defendant's new motor vehicles with OnStar systems installed and thereafter sending correspondence and electronic communications to threaten termination of said service and actually terminating said service prior to the six month period. Defendant further, falsely communicated to Plaintiff that Defendant "recently received notice that your 2015 Chevrolet Tahoe has been sold or traded." Defendant knows that Plaintiff and the Class are either new owners or new leasers and have neither sold nor traded their leased vehicles but Defendant makes such deceitful claim in order to justify their writing to warn consumers of the many disadvantages which would ensue should the consumer fail to continue their service beyond the six-month period. Defendant's pretense of claiming that a new owner or leaser of a new GM car would lose their Onstar service is a deceptive sales tactic that caused Plaintiff and

others apprehension, trepidation and fear of the consequences which would befall them should they be deprived of their free Onstar service when that free trial period had yet to expire.  The multiple communications from Defendant are nothing more than a deceptive and abusive sales pitch that relies upon provoking anxiety and fear to compel people to sign up for Onstar after, or even before, the free trial period expires.

39.     Defendant violated (9) b of N.Y. GBS.LAW §349:NY Code-Section 349 by communicating to consumers using unfair and unconscionable threatening language and warnings. On April 10, 2015 prior to the end of the six-month period, which ended on April 27, 2015, Defendant communicated to Plaintiff by e-mail purportedly signed by "Terry M. Inch, OnStar, Chief Operating Officer," that Plaintiff's service was terminated, making a point to emphasize: "This means that, even in an emergency, you will no longer be able to count on OnStar to provide critical services, including: Automatic Crash Response; Live, 24/7 OnStar Advisor emergency assistance; Stolen Vehicle Assistance. We hope you keep us in mind as you move on to your next vehicle and allow us to continue to keep you and your loved ones safe and secure while on the road."

40.     Further, on April 22, 2015, Defendant emailed Plaintiff again stating: "If you do not accept the OnStar User Terms and Privacy Statement immediately," that the consumer's service will be cancelled, and Defendant warned: "This means that even in an emergency, OnStar will be unable to provide you with critical services including: Automatic Crash Response; Live 24/7 OnStar Advisor Emergency assistance; Stolen Vehicle Assistance. To avoid deactivation, please act immediately. Only then can you ensure that OnStar will be there for you 24 hours a day, 7 days a week."

41.     Defendant's communications imply that any consumer who declines to renew OnStar, prior to the actual expiration of the free six month Onstar trial period, will knowingly decline to "keep you and your loved ones safe and secure while on the road" and will agree that "...even in an emergency, OnStar will be unable to provide you with critical services."  Consumers, like Plaintiff, an older adult with medical challenges, may well respond with the alarm Defendant unfairly intends to provoke with such threatening communications and actions such as prematurely terminated services.  Defendant's deceptive sales practices are designed to intentionally cause plaintiff and other consumers fear and trepidation as a means to sell Onstar services. The use of sales tactics of this nature is reprehensible, causing Plaintiff and similarly situated consumers alarm, distress and emotional harm.

42.     As a result of Defendant's above violations of the New York General Business Law. the Plaintiff has been damaged and is entitled to damages in accordance with the New York General Business Law.


## SECOND CAUSE OF ACTION

### (Breach of Contract)

43.   Plaintiff repeats. reiterates and incorporates the allegations contained in paragraphs numbered "1" through "42" herein with the same force and effect as if the same were set forth at length herein.


44.   On October 28, 2014, Plaintiff entered into a lease agreement for a vehicle, manufactured by Defendant GM.

45.   The Vehicle, and all vehicles manufactured by Defendant are equipped with an OnStar navigation system.

46.   According to the Plaintiff's lease agreement, Plaintiff and, upon information and belief, all consumers who lease Defendant's vehicles, are supplied with OnStar navigation system at no cost for a period of six (6) months, which free service period would end on April 27, 2015.

47.   In or about March 2015, Plaintiff received a letter from OnStar, stating that OnStar had reason to believe that the Vehicle had been sold or traded and therefore the OnStar services would be discontinued within a very short time unless Plaintiff contacted OnStar.

48.   In or about March 2015, Plaintiff contacted Defendant via telephone, and informed a representative for Defendant that this information was incorrect, and that the Vehicle had been neither sold nor traded.  Defendant's representative said she would correct her records accordingly.

49.   On April 10, 2015, Plaintiff received an electronic communication from Defendant, a copy of which is annexed as Exhibit "A".  Plaintiff was subsequently

told by a representative of Defendant that his account with OnStar was cancelled. After further conversation with Defendant's representative, Plaintiff was told that his OnStar service was reactivated.

50.   On April 22, 2015, Plaintiff received a second electronic communication from Defendant (Exhibit "B"). This communication threatened to discontinue Plaintiff's OnStar service unless he accepted the OnStar User Terms and Privacy Statement immediately. The notice went on to say "To avoid deactivation, please act immediately. Only then can you unsure that OnStar will be there for you 24 hours a day, 7 days a week."

51.   These communications from Defendant to Plaintiff were in breach of the lease agreement, which provided that Plaintiff would receive free OnStar service through and until April 27, 2015.

52.   As a result of this breach of contract, Plaintiff and other consumers like him who received similar notices from Defendant suffered alarm, distress and emotional harm.

## DEMAND FOR TRIAL BY JURY

53.     Plaintiff hereby respectfully requests a trial by jury for all claims and issues

in its Complaint to which it is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from the Defendant as follows:

A.      For actual damages provided and pursuant to of N.Y. GBL §349 and
        350.

B.      For damages resulting from Defendant's breach of contract;

C.      For attorneys' fees and costs provided and pursuant
        to New York General Business Law Section 349;


D.      For any such other and further relief, as well as further costs,

expenses and disbursements of this action, as this Court may deem just and proper.

Dated:     New York, New York
           June 19, 2015

                          Respectfully submitted,

                          By: _____
                          Edward B. Geller, Esq.(EG9763)
                           Edward B. Geller, Esq., P.C., Of Counsel to
                          M. HARVEY REPHEN & ASSOCIATES, P.C.
                          15 Landing Way
                          Bronx, New York 10464
                          Phone:     (914)473-6783

                          *Attorney for the Plaintiff* BRADLEY REPHEN


To:    General Motors
       Legal Department
       100 Renaissance Center
       P.O. BOX 100
       Detroit, MI 48265-2000

       *(Via Prescribed Service)*

       Clerk,
       United States District Court, Eastern of New York
       *(For Filing Purposes)*

EXHIBIT "A"

———— Original message ————
From: OnStar Subscriber Services <memberservices@email.onstar.com>
Date:04/06/2015 5:11 PM (GMT-05:00)
To: Brad Rephen <bradr@rephenlaw.com>
Subject: Notice: Your OnStar service has been cancelled

OnStar service in your vehicle has been cancelled. View online



Get connected: Like 

| Emergency | Security | Navigation | Connections | Diagnostics |

# CANCELLATION NOTICE

OnStar can no longer keep you safe, secure and connected on the road.

Dear Bradley Rephen,

We recently received notice that your 2015 Chevrolet Tahoe has been sold or traded. Therefore, your OnStar®1 services have been cancelled and your hardware has been deactivated. **This means that, even in an emergency, you will no longer be able to count on OnStar to provide critical services, including:**

- Automatic Crash Response
- Live, 24/7 OnStar Advisor emergency assistance
- Stolen Vehicle Assistance

We hope you keep us in mind as you move on to your next vehicle and allow us to continue to keep you and your loved ones safe and secure while on the road.

**If you still own this vehicle or have purchased a new one and wish to continue enjoying the peace of mind OnStar provides, please push the blue OnStar button in your vehicle to reactivate your services.** Only then can you ensure that an OnStar Advisor will be there for you 24 hours a day, 7 days a week.

Sincerely,

Terry M. Inch
OnStar, Chief Operating Officer

## Account Information

**Account Holder:** Bradley J. Rephen
**Account Number:** 117-293-215
**Vehicle:** 2015 Chevrolet Tahoe
**VIN:** 1GNSKBKC2FR285477

Plans & Services   |   Privacy Statement

 facebook.com/onstar   twitter.com/onstar   onstarconnections.com   onstar.com

[1] Visit onstar.com for coverage map, details, and system limitations. OnStar acts as a link to existing emergency service providers. Services vary by model and conditions.

† The OnStar Basic Plan is available for 5 years from the date of delivery of an eligible, new 2015 Model Year vehicle[a] and is transferable; includes OnStar Vehicle Diagnostics[b], Dealer Maintenance Notification, and access to RemoteLink Key Fob Services[c]. The OnStar Basic Plan does not include any Emergency Services, Automatic Crash Response, Stolen Vehicle Assistance, live Advisor service, or Hands-Free Calling. These and other services are available under a paid plan.

[a]Limitations apply. See OnStar User Terms and Privacy Statement for more details. If you sell your vehicle or wish to cancel use of Basic Plan services, you must contact OnStar at 1.888.4.ONSTAR.
[b]Capabilities vary by model.
[c]Requires Android[TM], Blackberry®, IOS® or Windows® device. Please visit onstar.com/mobile for more details.

If you are deaf, hard of hearing, or speech impaired, you may now use the dedicated TTY connection to call us toll-free at 1.877.248.2080, or email us at TTY@onstar.com for assistance or with questions regarding your OnStar account.

Would you like to unsubscribe from future OnStar email communications?

Would you like to update your email address?

Do you have questions or concerns? **Please do not reply to this email.** Contact us for assistance.

Ensure OnStar email delivery – add memberservices@email.onstar.com to your address book.

You can contact OnStar at the following address: Attn: OnStar Subscriber Services, PO Box 1027, Warren, MI 48090-1027.

©2015 OnStar. All rights reserved.

EM-DEAC-SOTR-USE-0215

EXHIBIT "B"

-------- Original message --------
From: OnStar Subscriber Services <memberservices@email.onstar.com>
Date:04/22/2015 1:53 PM (GMT-05:00)
To: Brad Rephen <bradr@rephenlaw.com>
Subject: Action Needed: OnStar User Terms and Privacy Statement

*Don't get deactivated - Act now before it's too late.*                    *View Online*

# Complete Your Account Set-up

Welcome to OnStar![1] We are excited to have you on board and hope you are enjoying your new vehicle. To complete account set-up and activation of your OnStar Trial for your 2015 Chevrolet Tahoe, it is important for you to accept the OnStar User Terms and Privacy Statement. To do so, simply:



Log-in to your account



Review User Terms & Privacy Statement



Accept or Decline User Terms & Privacy Statement

**ACCESS YOUR ACCOUNT**

Account Number: 117-293-215

VIN: 1GNSKBKC2FR285477

If you do not accept the OnStar User Terms and Privacy Statement immediately, or if you decline, your OnStar trial and RemoteLink Key Fob Services (and OnStar Vehicle Diagnostics for eligible vehicles)[2] will be cancelled and the OnStar hardware in this vehicle will be deactivated. This means that even in an emergency, OnStar will be unable to provide you with critical services including:

- Automatic Crash Response
- Live, 24/7 OnStar Advisor Emergency assistance
- Stolen Vehicle Assistance

To avoid deactivation, please act immediately. Only then can you ensure that OnStar

will be there for you 24 hours a day, 7 days a week. If you have already accepted the User Terms and Privacy Statement, please disregard this letter.


Sincerely,

OnStar Customer Service Team


        


<u>Plans and Services</u>          <u>Privacy Statement</u>


*1 Visit **onstar.com** for coverage map, details and system limitations. OnStar acts as a link to existing emergency service providers. Services vary by model and conditions.*

*2 The OnStar Basic Plan is available for 5 years from the date of delivery of an eligible, new 2015 Model Year vehicle[a] and is transferable; includes OnStar Vehicle Diagnostics[b], Dealer Maintenance Notification, and access to RemoteLink Key Fob Services[c]. The OnStar Basic Plan does not include any Emergency Services, Automatic Crash Response, Stolen Vehicle Assistance, live Advisor service, or Hands-Free Calling. These and other services are available under a paid plan.*
*a. Limitations apply. See OnStar **User Terms** and **Privacy Statement** for more details. If you sell your vehicle or wish to cancel use of Basic Plan services, you must contact OnStar at 1.888.4.ONSTAR.*
*b. Capabilities vary by model.*
*c. Requires Android[TM], Blackberry[®], iOS[®] or Windows[®] device. Please visit **onstar.com/mobile** for more details.*

*If you are deaf, hard of hearing, or speech impaired, you may now use the dedicated TTY connection to call us toll free at 1.877.248.2080 or email us at **TTY@onstar.com** for assistance or with questions regarding your OnStar account.*

*Would you like to **unsubscribe** from future OnStar email communications?*

*Would you like to **update** your email address?*

*Do you have questions or concerns? Please do not reply to this email. **Contact us** for assistance.*

*Ensure future OnStar email delivery – add **memberservices@email.onstar.com** to your address book.*

*You can contact OnStar at the following address: Attn: OnStar Subscriber Services, P.O. Box 1027, Warren, MI 48090-1027.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK               CASE NO.:


BRADLEY REPHEN,

                              Plaintiff,

          -against-


GENERAL MOTORS CORPORATION d/b/a ONSTAR,

                              Defendant(s),


_____


# COMPLAINT

_____


Edward B. Geller, Esq., P.C., Of Counsel to
*M. HARVEY REPHEN & ASSOCIATES, P.C.*
*15 Landing Way*
*Bronx, New York 10464*
*Phone:     (914)473-6783*


_____