USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/26/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRADLEY REPHEN,

                    Plaintiff,

    -against-

GENERAL MOTORS CORPORATION d/b/a
ONSTAR and GENERAL MOTORS LLC,

                    Defendant.

No. 15-cv-5206 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Bradley Rephen brings this action against Defendant General Motors

Corporation ("GM") d/b/a OnStar and General Motors LLC alleging claims for violations of

New York General Business Law ("GBL") §§ 349 and 350 and breach of contract.  Before the

Court is Plaintiff's motion to amend the Amended Class Action Complaint (ECF No. 8) pursuant

to Rule 15 of the Federal Rules of Civil Procedure.  (ECF Nos. 20–21.)  Additionally before the

Court is Defendant's cross-motion to dismiss pursuant to Rule 12(b)(6), to strike the class action

allegations and for sanctions.  (ECF No. 24.)[1]  For the following reasons, Plaintiff's motion to

amend is DENIED and Defendant's motion to dismiss is GRANTED.

## BACKGROUND

      The following facts are taken from the proposed Second Amended Complaint ("SAC")[2]

unless otherwise noted and are accepted as true for purposes of these motions.

      On October 18, 2014, Plaintiff entered into a lease agreement for a vehicle manufactured

---

[1] Though Defendant's motion is captioned as a "Motion to Dismiss, to Strike the Class Action Allegations and For
Sanctions," Defendant's papers do not include any arguments for sanctions.

[2] The proposed Second Amended Complaint is appended to Plaintiff's Opposition to Defendant's Motion to
Dismiss, to Strike the Class Action Allegations and for Sanctions and in Reply in Support of Plaintiff's Motion to
Amend the Complaint. (ECF No. 27.)

by GM.  (SAC ¶ 20.)  Pursuant to the lease agreement, Plaintiff received a free, six-month trial of OnStar services which expired on April 27, 2015.  (*Id*. ¶¶ 23–24.)  In or about March 2015, Plaintiff received a letter from OnStar notifying him that it had reason to believe Plaintiff's vehicle had been sold or traded and therefore the OnStar services would be cancelled (the "March Correspondence").  (*Id*. ¶ 25.)  Plaintiff thereafter called OnStar and informed a representative that the March Correspondence was inaccurate and that Plaintiff had neither sold nor traded the car.  (*Id*. ¶ 26.)  The representative stated that she would correct OnStar's records.  (*Id*.)

On April 10, 2015, Plaintiff received an electronic communication from OnStar, entitled "CANCELLATION NOTICE," notifying Plaintiff that his OnStar services had been deactivated because his vehicle was traded or sold (the "April 10 E-mail").  (*Id*. ¶¶ 27-30, Ex. A.)  On April 19, 2015, Plaintiff attempted to use his OnStar and was informed by an OnStar advisor that his account had been cancelled.  (*Id*. ¶ 32.)  Plaintiff explained that the vehicle had not been traded or sold and that, pursuant to the lease agreement, his OnStar services were not set to expire until April 27, 2015.  (*Id*.)  The OnStar advisor reinstated Plaintiff's services.  (*Id*.)

On April 22, 2015, Plaintiff received a second electronic communication from OnStar (the "April 22 E-mail").  (*Id*. ¶ 33, Ex. B.)  The email stated: "If you do not accept the OnStar User Terms and Privacy Statement immediately, or if you decline, your OnStar trial and RemoteLink Key Fob Services (and OnStar Vehicle Diagnostics for eligible vehicles) will be cancelled and the OnStar hardware in this vehicle will be deactivated."  (SAC Ex. B.)

The Proposed Second Amended Complaint also asserts claims on behalf of a class of individuals who leased vehicles from GM and received notices of OnStar cancellation services in error.

## LEGAL STANDARDS

### I.  Motion to Amend Pleadings

A party may amend a pleading once as a matter of course or at any time before trial with leave of the court. Fed. R. Civ. P. 15(a)(1)–(2). If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *accord Block,* 988 F.2d at 350. Thus, if the underlying facts and circumstances upon which the moving party relies support a claim or defense sought to be added, the party should generally be allowed to test that claim or defense on the merits. *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *accord EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508 (W.D.N.Y. 2007). Nonetheless, leave to amend may properly be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy*, 626 F.3d at 725–26 (quoting *State Teachers Ret. Bd.*, 654 F.2d at 846); *accord Ruotolo*, 514 F.3d at 191 (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. 227); *cf. State Teachers Ret. Bd.*, 654 F.2d at 856 ("Reasons for a proper denial of leave to amend include undue delay, bad faith,

futility of amendment, and perhaps most important, the resulting prejudice to the opposing party.").

## II.      Motion to Dismiss

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Ruotolo*, 514 F.3d at 188.  "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

## DISCUSSION

## I.      Defendant Was Not Prejudiced by Plaintiff's
Failure to Attach a Proposed Second Amended Complaint to the Motion

In the present case, Plaintiff seeks leave to amend the pleadings to add OnStar as a defendant.  (Declaration of Edward B. Geller, Esq. (ECF No. 22) ¶ 5.)  As an initial matter, Defendant contends that Plaintiff's failure to append a copy of the proposed Second Amended Complaint to his motion is grounds for denying Plaintiff's request.  (Memorandum of Law of

4

Defendant General Motors LLC in Opposition to Plaintiff's Motion to Amend and In Support of Defendant's Motions to Dismiss, To Strike the Class Action Allegations and For Sanctions (ECF No. 25) at 5) (citing *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 233 F.R.D. 327, 329 (S.D.N.Y. 2005); *McGee v. Dunn*, 940 F. Supp. 2d 93, 109–10 (S.D.N.Y. 2013); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

In the cases cited by Defendant, the courts were particularly focused on the prejudice to the defendants resulting from the plaintiffs' failures to provide their adversaries with copies of the proposed amended pleadings. *See, e.g.*, *Am. Tissue*, 233 F.R.D. at 329 ("under the circumstances ATI's failure to attach any proposed amended complaint to its motion was *prejudicial* to DLJ") (emphasis added). Here, however, Plaintiff's failure to include a copy of his proposed Second Amended Complaint with his motion results in little, if any, prejudice to Defendant. At the pre-motion conference before this Court on October 22, 2015, which was scheduled at the request of Defendant's counsel in anticipation of Defendant's motion to dismiss, Plaintiff's counsel expressly indicated that he intended to amend the pleadings and requested a briefing schedule to seek leave of the Court to amend. (Declaration of Steven R. Kramer in Opposition to Plaintiff's Motion to Amend and In Support of Defendant's Cross-Motion to Dismiss ("Kramer Decl." or ECF No. 26), Exhibit A at 22–23.) Further, the Court indicated at several points during the October 2015 conference that Plaintiff's failure to name OnStar as a defendant appeared problematic.[3] Accordingly, it was foreseeable that Plaintiff's amended

---

[3]     THE COURT: Do you know what's the ironic part about this? Not once do you point to any conduct . . . [of] General Motors, LLC. I've been asking you questions about the correspondence. It's all from Onstar . . . maybe it's Onstar that's behaving deceptive, but not once have you told me what GM has done that's deceptive other than they leased a car to your client and part of the lease entitled him to six months of free Onstar service. Your client received the six months free service, and I still don't get what GMC has done that's deceptive . . . .

Kramer Decl., Exhibit A at 19:19–20:8.

pleadings would address, at a minimum, the Court's concerns that OnStar, not GM, was the company whose communications with Plaintiff were purportedly deceptive.  Further, Plaintiff appended a copy of the proposed Second Amended Complaint to his opposition to Defendant's motion to dismiss (ECF No. 27), which allowed Defendant to address it in the cross-reply (ECF No. 28.)

The Court by no means condones Plaintiff's failure to include a copy of the draft Second Amended Complaint with the initial motion papers.  Nevertheless, in the absence of any real prejudice to Defendant from the belated receipt of the proposed Second Amended Complaint, the Court will not deny Plaintiff's motion solely on the grounds that Plaintiff did not attach the draft pleadings to his motion.  *See Christiana Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 745 F. Supp. 150, 164 (S.D.N.Y. 1990) ("The Court agrees with defendant that plaintiff's failure to file a proposed amendment at the time of its motion, or at the latest after defendant indicated it desired a copy of such a proposed amendment, was not within the liberal spirit of Rule 15. Nonetheless, the Court cannot find that defendant will be so unduly prejudiced by the proposed amendment as to require the Court to deny plaintiff's motion to amend.").

## II.   **Plaintiff's Proposed Amendment Is Futile**

The only amendment Plaintiff proposes in the draft Second Amended Complaint is to add OnStar as a defendant.  However, that amendment does not cure the deficiencies in Plaintiff's pleadings.  First, with respect to Plaintiff's GBL claims, he fails to allege a "deceptive act" on the part of OnStar.  Second, as to Plaintiff's breach of contract claim, he does not allege cognizable damages.

### A.  GBL Claims

Plaintiff asserts claims under GBL §§ 349 and 350.  "'A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'"  *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000)).  "GBL § 350 prohibits false advertising and has the same elements as § 349, except for the requirement that the Defendant's *advertisement* '(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury.'"  *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015) (quoting *Andre Strishak & Associates, P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608, 609 (2d Dep't 2002) (citations omitted)).  Defendant contends that Plaintiff cannot establish the three requisite elements of a GBL § 349 or §350 claim, even in light of Plaintiff's proposed addition of OnStar as a defendant.

### i.        Consumer Oriented Conduct

In New York, consumer oriented conduct refers to conduct which has "'a broader impact on consumer at large . . . .'"  *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (N.Y. 1995)).  Though a plaintiff need not demonstrate a repetition or pattern of deceptive conduct, "New York courts have recognized that 'private contract disputes' between the parties do not 'fall within the ambit of the statute.'"  *WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 498 (S.D.N.Y. 2011) (quoting *Oswego*, 85 N.Y.2d at 25).

In the present case, the alleged consumer oriented conduct is Defendant's practice of entering into vehicle lease agreements with complimentary six-month OnStar services,

transmitting notices that falsely allege the vehicles were sold or traded, and terminating complimentary OnStar services prior to the end of the six-month trial period.  (SAC ¶ 38.) Plaintiff further alleges that he, as well as a proposed class of "consumers who lease Defendant's new motor vehicles with OnStar systems installed," received these false termination notices, causing them "apprehension, trepidation and fear of the consequences which would befall them should they be deprived of their free OnStar service when that free trial period had yet to expire." (*Id.*)  Defendant argues that "Plaintiff fails to allege that *any* other GM customers received OnStar cancellation notices in error, which is fatal to his GBL claim."  (Def.'s Cross-Mot. at 6.) However, the proposed Second Amended Complaint specifically states that "Defendant knows that Plaintiff *and the Class* are either new owners or new leasers and have neither sold nor traded their leased vehicles," yet transmits termination notices "to justify their writing to warn consumers of the many disadvantages" of failing to continue OnStar services.  (SAC ¶ 38.) Admittedly, Plaintiff's allegations that Defendant's notices were transmitted broadly to consumers is thin; however, they are sufficient to substantiate "consumer oriented conduct" at the motion to dismiss stage.  *See WorldHomeCenter.com*, 851 F. Supp. 2d at 499 ("[T]he Court finds that the alleged communication directly to consumers is enough to establish consumer-oriented conduct at this stage of the litigation.  Whether such misinformation was actually funneled to consumers is an issue to be developed in discovery and taken up on summary judgment.").

### ii.       Materially Misleading

"'Deceptive practices' within the meaning of Section 349 are 'acts which are dishonest or misleading in a material respect.'"  *WorldHomeCenter.com*, 851 F. Supp. 2d at 499 (quoting *Kramer v. Pollock-Krasner Fund*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995)).  "The New York

Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *WorldHomeCenter.com*, 851 F. Supp. 2d at 499 (quoting *Oswego*, 85 N.Y.2d at 26).

Neither the March Correspondence nor the April e-mails were materially misleading. While the March Correspondence and the April 10 E-mail were premised upon misinformation, a mere mistake does not constitute a deceptive practice. By Plaintiff's own admission, he was not misled by either the March Correspondence or the April 10 E-mail because he immediately contacted OnStar to notify OnStar of its *mistake*, and OnStar reinstated Plaintiff's services. The Court further finds that the April 22 E-mail was not materially misleading. As Defendant points out, nowhere in the April 22 E-mail does it indicate that Plaintiff's OnStar services would be deactivated prior to the expiration of the free, six-month trial. Indeed, as Plaintiff received this correspondence a mere five days prior to the end of the trial period, a reasonable consumer would understand this notification to be a warning of impending termination of free services and an opportunity to sign up for continuing, paid services. Far from misleading Plaintiff, the April 22 E-mail acted a courtesy reminder of the end of the OnStar trial period and prompted Plaintiff to sign up for an OnStar account to continue using the services, which he did.

Plaintiff's argument that OnStar's communications acted as a "deceptive and abusive sales pitch that relies on provoking anxiety and fear to compel people to sign up for OnStar after, or even before, the free trial period ends" is entirely disingenuous. (SAC ¶ 38.) With respect to Plaintiff, any argument that he was coerced into purchasing OnStar's services is belied by his sworn statement that he "heavily relied" upon OnStar's services (Affidavit of Bradley Rephen (ECF No. 23) ¶ 6) and purchased the services after the expiration of his free trial period.

Furthermore, Plaintiff's conclusory statement that "[t]here is no telling how many other innocent customers were blindsided and adversely affected by similar acts of the Defendant" is improperly speculative and unpersuasive.  (*Id.* ¶ 7.)  The Court fails to see how any of the correspondence from OnStar could have misled a reasonable consumer.  Accordingly, the Court dismisses Plaintiff's GBL claims.

### B.  Breach of Contract Claim

Under New York law, "[t]o succeed in a breach of contract claim, four elements must be satisfied: the making of a contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and damages suffered by the plaintiff." *Coastal Aviation, Inc. v. Commander Aircraft Co.*, 937 F. Supp. 1051, 1060 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997).  Defendant contends that Plaintiff's breach of contract claim fails because Plaintiff does not, and cannot, allege damages as he concedes that he experienced no disruption in his OnStar services.  Plaintiff asserts, on the other hand, that his damages take the form of severe emotional distress and anxiety attributable to OnStar's termination notices.  He additionally argues that the time he expended to rectify OnStar's error constitutes damages.

First, Plaintiff's allegation that he suffered severe emotional distress cannot substantiate damages in this case.  It is well settled in New York that, "absent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty." *Wehringer v. Standard Sec. Life Ins. Co. of New York*, 57 N.Y.2d 757, 759 (N.Y. 1982); *see Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 529 (N.Y. 1984); *Franklin v. Liberty Mut. Ins. Co.*, No. 08-cv-7120 (DAB), 2011 WL 476613, at *2 (S.D.N.Y. Feb. 9, 2011) ("Under New York law, in a breach of contract action, an individual generally cannot recover for emotional and mental distress, social humiliation, wounded feelings, serious anxiety or public ridicule

allegedly resulting from the breach.") (citing *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985)).

Second, the purported time Plaintiff spent rectifying OnStar's error does not equate to contract damages. The single case cited by Plaintiff in support of this argument is readily distinguishable. In *Fritz v. Resurgent Capital Services, LP*, the court concluded that Plaintiff sufficiently alleged "injury" to state a GBL § 349 claim by pointing to the "time spent and costs incurred by consumers to defend against meritless collection lawsuits that should never have been filed and should never have been prosecuted." 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013). As an initial matter, the Court in *Fritz* was analyzing injury for a GBL claim, not damages in a breach of contract claim. More importantly, however, the significant costs associated with hiring an attorney are fundamentally different from the situation in the present action. Here, Plaintiff concedes that he did not experience a disruption in his services—his OnStar services were reinstated the *same* day he attempted to use them and was informed they had been deactivated. (SAC ¶ 32.) He does not allege that he experienced repeated or lengthy disruptions in his OnStar service, nor does he allege that he suffered any sort of injury resulting from a disruption in OnStar service. The sole allegation is that Plaintiff contacted an OnStar representative to explain his vehicle had not been traded or sold and his service was reactivated. A single conversation with a customer representative to rectify a service error cannot serve as the basis of damages in a breach of contract claim. These sorts of conversations, though perhaps frustrating to individuals, are merely a byproduct of consumerism. Accordingly, the Court dismisses Plaintiff's breach of contract claim.[4]

---

[4] Having dismissed all of Plaintiff's claims, the Court need not address the class allegations. *See Rene v. Lindgren*, No. 83-cv-2191, 1983 WL 2113, at *2 n.1 (S.D.N.Y. Dec. 1, 1983).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is DENIED and Defendant's motion to dismiss is GRANTED.  The Court respectfully directly the Clerk to terminate the motions at ECF Nos. 20, 21, and 24 and close the case.

Dated:   July 26, 2016
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge